No. 13482

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

_____

STATE OF MONTANA,

    Plaintiff and Respondent,

    -vs-

RICHARD CLARENCE PEPPERLING,

    Defendant and Appellant.

_____

Appeal from:  District Court of the Thirteenth Judicial District,
              Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

    For Appellant:

        Richard Pepperling, Pro Se, Deer Lodge, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Harold F. Hanser, County Attorney, Billings, Montana

_____

                        Submitted on briefs:  May 9, 1978

                        Decided:  JUL 26 1978

Filed:  JUL 26 1978


            _Thomas J. Kearney_
                            Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal by the defendant Richard Clarence Pepperling from an order of the District Court, Thirteenth Judicial District, Yellowstone County, on July 2, 1976, denying the motion of the appellant Pepperling to withdraw his guilty plea and to vacate his sentence. His guilty plea was made on November 5, 1975 to a charge of burglary with increased punishment, and a sentence of 20 years was given to him as a result of said plea.

This case come on regularly for consideration without oral argument under the Internal Operating Rules of this Court.

On August 22, 1975, an information was filed against the defendant, charging him with the crime of burglary of the Fraternal Order of Eagles building located in Laurel, Montana. Under section 94-6-204(1), R.C.M. 1947, at the time of his arraignment, the defendant was served in open court by the county attorney with a Notice to Increase Punishment, in which notice the defendant was informed that the State of Montana would seek increased punishment of the defendant as a prior convicted felon, on two previous convictions, one for grand larceny committed in 1971, and one for burglary committed in 1972.

At the time of his arraignment, the defendant informed the court that he was indigent. Accordingly, the court appointed Michael Whalen, an attorney in Billings, one of three who act as public defenders in that court, to represent defendant in this case.

Defendant told the court that of the three attorneys then employed by the county as public defenders, Michael

Whalen, John Adams, and Russell Fillner, he would prefer not to have either Mr. Whalen or Mr. Adams appointed. The court first appointed Mr. Fillner to represent him and then learned that Mr. Fillner was representing a co-defendant charged in a separate information with the same crime. Because this appeared to present a conflict of interest, the court then appointed Mr. Whalen to represent defendant. This was approved by defendant at the time.

On September 12, 1975, defendant came into court upon his petition pro se, that his counsel, Mr. Whalen, be dismissed and that he be assigned another counsel to represent him in the case. He informed the court that, "me and Mr. Whalen don't see eye to eye". He told the court that he felt he was entitled to fair representation and he just didn't feel that he would receive that representation from Mr. Whalen. The court stated that Mr. Whalen was an excellent attorney and well qualified in criminal matters and the court expressed its feeling that Mr. Whalen took a personal interest in the persons he was appointed to represent. The District Court explained to defendant the problem he was presenting to the court, inasmuch as defendant did not want the services of Mr. Adams, and Mr. Fillner was representing another party that might give rise to a conflict of interest. The court stated that it had appointed a competent attorney to represent him.

Mr. Whalen was present at the hearing of September 12, 1975. He stated to the court in the presence of defendant that there were two things that defendant had requested of him. One, defendant felt that Mr. Whalen should make a motion for discovery and two, he felt that Mr. Whalen should

make a motion for separate trials. Mr. Whalen explained to the court that he had pointed out to defendant that he was in fact receiving a separate trial and that he would not be tried with the co-defendant. Further, Mr. Whalen had gone through the entire police file and had obtained and had in his possession copies of the statements of witnesses against defendant so that he had all of the information that any motion for discovery might reveal. He had made these copies of statements available to defendant.

The court denied the motion of the defendant to dismiss his counsel and to appoint substitute counsel.

On the same day, September 12, 1975, defendant Pepperling presented to the court his written petition pro se, objecting to the regulations of the county jail relating to visiting hours and inspection of mail. On September 15, 1975, he presented to the court his written petition pro se, stating that he was being harassed by the jailer in the county jail. On September 19, 1975, a hearing was had before the District Court respecting these petitions where defendant was represented by Mr. Russell Fillner. Upon hearing the evidence presented by plaintiff, the District Court denied the petitions.

On September 19, 1975, defendant came into court with his attorney Mr. Whalen, and there Mr. Whalen advised the court that defendant was dissatisfied with Mr. Whalen's services and was asking for substitution of counsel. The court took the matter under advisement and on that day again denied petitioner's request that his counsel be dismissed and that substitute counsel be appointed.

Meanwhile, the court set the trial of the cause for September 24, 1975 at 1:30 p.m.

Further, on September 19, 1975, defendant filed written motions, again pro se, for (1) a request for dismissal of his counsel, and (2) a request for postponement of his trial. On September 22, 1975, defendant filed his letter in support of his motion for postponement of his trial. On September 24, 1975, defendant filed a written motion pro se, for change of venue, charging prejudice against him in the county, and his written request for the dismissal of the presiding judge. A motion of defendant for withdrawal of the judge was treated as a motion for disqualification, and on September 26, 1975, his motion was granted and the cause was transferred to Judge C. B. Sande. All of the other pending petitions and motions of defendant were denied on September 24, 1975. The trial was vacated and reset to October 21, 1975.

On September 26, 1975, defendant, again acting on his own, filed a written petition for the dismissal of Judge Sande. A hearing was held on this motion on October 3, 1975, with Judge Jack Shanstrom presiding and in this case, after a hearing of testimony adduced both by defendant and the county, the motion for the disqualification of Judge Sande was denied. Mr. Whalen was present at this hearing and told the court that he had advised defendant as to the proper requisites for an affidavit of disqualification of a judge in a criminal case.

On the 6th day of October, 1975, defendant filed his motion through Mr. Whalen for an order of substitution of Judge Sande and thereafter, on October 15, 1975, Judge Charles Luedke assumed jurisdiction in the case. The trial of defendant was then reset for November 5, 1975, at 9:30 a.m.

On October 22, 1975, defendant had again filed his written motion for dismissal of his counsel, and also a petition for a show cause hearing, which is in effect a motion for suppression of certain evidence obtained against him, and a third written petition to the same effect with respect to that evidence. These petitions were filed without the aid of his counsel, Mr. Whalen. On October 23, 1975, defendant filed his motion to disqualify Judge Luedke and at the same time, filed with the court his petition that Judge Luedke dismiss his counsel and appoint another attorney for him.

October 24, 1975, Judge Luedke reset the trial of defendant for November 4, 1975, and on that same date, Judge Jack Shanstrom of the Sixth Judicial District assumed jurisdiction.

On October 29, 1975, defendant, through his counsel, moved the court for the disqualification of Judge Shanstrom. However, on November 5, 1975, at 9:30 a.m., the time set for trial, defendant and his counsel, Mr. Whalen, appeared before Judge Shanstrom and notified the judge that they wished to make a motion to change the plea of defendant from not guilty to guilty. In the meantime, before the trial date, Mr. Whalen, as defendant's counsel, had given notice to the county attorney of two additional alibi witnesses required by defendant; Mr. Whalen had requested and obtained an order that a potential defense witness imprisoned at Deer Lodge be brought to Billings for the trial; and he had obtained the county attorney's entire case file prior to the date set for trial.

In the proceedings which occurred on November 5, 1975, defendant was present in court with his counsel, Mr. Whalen. The court advised defendant that before accepting his plea of guilty, he should understand that the State was ready to proceed to trial at that time and that the witnesses were all subpoenaed and present and available to go to trial and that the full jury panel was also present, ready for the trial, and that any plea that he made would have to be voluntary on his part, freely made by him, and that he must agree there had been no coercion or duress, or threats made to him. To this statement, defendant agreed. The court further stated that he wanted the record to show that he had discussed with defendant's counsel what sentence he would impose on a plea of guilty and that he had informed him that he would impose a sentence of 20 years. Defendant stated he understood that. Defendant further stated that no other promises had been made to him and that he fully understood what the sentence would be. He also stated that he understood that if it was his desire to go to trial, everything was available at that time and that he could go to trial. Defendant stated that he would just as soon withdraw his plea. His counsel then reminded the court that it was his understanding that on a plea bargaining basis, the 20 year sentence imposed would run concurrently with any time to be served for defendant's violation as a parolee. The court said this was his understanding and that the sentence and the parole violation time, if any, would run concurrently. Thereupon the District Court accepted the plea of guilty then made by defendant and imposed the sentence of 20 years, defendant having waived his right for further time for pronouncing the judgment and sentence.

On December 18, 1975, the District Court received in the mail from defendant, confined in the prison at Deer Lodge, his request in forma pauperis for a copy of the transcript concerning his change of plea on November 5. This transcript was furnished to defendant. On January 21, 1976, the District Court received the motion of defendant, appearing pro se, to withdraw his guilty plea and to vacate the sentence imposed upon him.

On July 11, 1976, Judge Shanstrom denied the motion to withdraw his guilty plea and to vacate the sentence. In its order of denial, the court stated that the matter of the change of plea was discussed in advance with counsel and the defendant, and during the proceedings, defendant asked the court if this would run concurrently with the sentence he was presently serving and that the accused was advised by the court that it would run concurrently. The court also pointed out that at the time of the change of plea, defendant knew that the jury was present in the jury box and all the prosecution witnesses were present and ready to go to trial and that the evidence overwhelmingly pointed to his guilt. The court further found that there was no merit to defendant's attempt to disqualify him and denied any motion to disqualify him in the case. With respect to defendant's representation by counsel, the District Court also noted that the Supreme Court has repeatedly held that the defendant is not entitled to counsel of his choice but rather to adequate and competent counsel. The Court stated that Mr. Whalen was a competent, capable and able defense attorney and that he adequately protected defendant at all stages of the proceedings.

On July 12, 1976, defendant filed his written notice of appeal, and was given permission to proceed on his appeal in forma pauperis.

Defendant had noted several grounds in his motion of the court for withdrawal of his guilty plea, but on his appeal, his single contention is that the District Court's refusal to dismiss his appointed counsel and appoint for him different counsel deprived him of the opportunity of a fair trial and caused him to plead guilty. The principal force of his argument is that he did not receive effective assistance of appointed counsel.

We have set out the repletion of motions and petitions filed by defendant on his own, even though he was represented by counsel at the time, to show the voluntariness of his decision to change his plea to guilty. As the District Court noted in denying defendant's motion to withdraw his guilty plea, defendant was "certainly well aware and well advised about his legal rights under the Constitution of the United States, the State of Montana, and certainly all of the additional qualifications as set down under the Miranda decision".

It is clear from the record that defendant decided to change his plea on his own. There is no suggestion here that he changed his plea on advise of his counsel, or that his counsel misled him into changing his plea.

The contentions of defendant are that at the time the trial had been set, his counsel was not prepared to go to trial, "did not wish to take the case to trial", had not investigated the facts of the case or interviewed the witnesses. Defendant then contends that, realizing the futility of going to trial with his attorney, he had no other choice

but to plead guilty. He now contends he was innocent of the charge.

Assignments of error not contained in the record need not be considered by an appellate court. See State v. Wong Son (1943), 114 Mont. 185, 133 P.2d 761; State v. Stevens (1946), 119 Mont. 169, 172 P.2d 299; State v. Thomson (1976), 169 Mont. 158, 545 P.2d 1070.

The granting or refusal of permission to withdraw a plea of guilty and to substitute a plea of not guilty rests in the discretion of the trial court and is subject to review only where an abuse of discretion has been shown. State v. Nance (1947), 120 Mont. 152, 184 P.2d 554; State v. Mack (1958), 134 Mont. 301, 330 P.2d 968.

Here the record does not support defendant's contentions regarding his counsel, nor does it show that the District Court abused its discretion in denying defendant's motion to change his plea of guilty. With respect to his counsel, the record points the other way: the attorney had obtained the full county attorney's file with respect to defendant, had made that file available to defendant, had applied to the court to procure witnesses to attend the trial, and was present with the defendant on the morning the trial had been set, ready to go to trial. It further appears that defendant was not misled into pleading guilty and he did so with full understanding as to the consequences. State v. Nance, supra.

Since Gideon v. Wainwright (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, an indigent defendant in a state criminal prosecution is entitled to have counsel appointed to represent him. The indigent's right to counsel includes the right to have "effective assistance". State v. McElveen

(1975), 168 Mont. 500, 503, 544 P.2d 820. While the District Court here did not require hearings on the contentions of defendant with respect to his appointed counsel, such hearings are unnecessary where it appears that the contentions of the defendant are contradicted by facts in the record. See United States v. Morrissey (2nd Cir. 1972), 461 F.2d 666.

Defendant relies on Faretta v. California (1974), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, to support his contention that since he was dissatisfied with his appointed counsel, he was entitled to have the court appoint new counsel for him. His confidence in Faretta is misplaced. Faretta holds only that a criminal defendant, under the Sixth and Fourteenth Amendments of the United States Constitution, has a right to have appointed counsel dismissed and to proceed without counsel, should he wish to do so. Here, defendant is insisting that because he was dissatisfied with his appointed counsel, the court should have discharged that attorney from representing defendant and appointed different counsel. No case so far concedes that right. Rather, the cases are in the other direction. His right to counsel does not include the right to select an attorney of his own choosing, United States v. Clark, (W.G. Okla. 1976), 429 F.Supp. 89, 98, or require that the particular attorney appointed must be approved by the defendant, Petition of Hunsinger (1969), 153 Mont. 445, 456 P.2d 304.

We hold, therefore, that an indigent defendant has a right to appointed counsel, and that such counsel must render "effective assistance". We further hold, that once counsel has been appointed by the District Court, and such counsel is rendering effective assistance to the defendant,

the defendant may not have his appointed counsel dismissed or discharged and obtain different counsel or demand that certain counsel be appointed for him. When his appointed counsel is rendering effective assistance, the defendant has the choice of (1) continuing with the counsel so appointed, or (2) having his counsel dismissed and proceeding on defendant's own, pro se. See Faretta v. California, supra.

Here the defendant voluntarily pleaded guilty to the crime charged. Since we find that he was receiving effective representation by his appointed counsel, such plea of guilty by defendant wiped out any claim of defendant as to defects or irregularities in the criminal proceedings before that plea, short of constitutional dimensions. Tollett v. Henderson (1973), 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235. Defendant, having received the benefit of plea bargaining in his case, is bound thereby. The State is entitled to be assured that defendant will be held to his bargain.

The order of the District Court denying the motion of defendant to change his plea from guilty to not guilty is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices