FILED

11/06/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0049

DA 23-0049

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 257

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOSE FRANK PATINA,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 21-937
Honorable Rod Souza, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Rufus I. Peace, Peace Law Group, LLC, Blackshear, Georgia

      For Appellee:

          Austin Knudsen, Montana Attorney General, Christine Hutchison, Assistant Attorney General, Helena, Montana

          Scott D. Twito, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs:  August 7, 2024

Decided:  November 6, 2024

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Jose Frank Patina (Patina) appeals the decision of the Thirteenth Judicial District Court, Yellowstone County, denying his request for substitution of counsel. We affirm.

¶2 We restate the issue on appeal as follows:

> *Whether the District Court abused its discretion by declining to hold a separate hearing after conducting an adequate initial inquiry into Patina's request for substitute counsel.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Patina had a three-day jury trial from May 31 through June 2, 2022, where he was found guilty of five counts of Assault with a Weapon. On the first day of trial, the District Court confirmed that Patina understood his charges, the associated penalties, and the plea offer. The District Court asked Patina if he had been given the opportunity to discuss the State's case and his defense with counsel. Patina raised concerns over "not receiv[ing] . . . the full discovery in hand" because he had only been *shown* certain audio-visual evidence, as opposed to receiving physical copies. His attorney explained that this was office policy, as defendants in custody are not able to view digital discovery. Nonetheless, the attorney had provided Patina with transcripts of the audio statements after they were received. The District Court continued its questioning and confirmed that Patina had the benefit of all discovery, understood the State's anticipated witness testimony and theory of the case, and understood his counsel's likely defense. The trial proceeded.

¶4 On the third day of trial, Patina requested to address the District Court regarding his representation. Patina, his counsel, and the judge met in chambers to discuss the issue outside the presence of the State and jury. Patina raised concerns about the timing and

substance of certain motions, confusion over a status hearing, the timing of his attorneys' pre-trial visit, and his ability to view audio-visual evidence. He stated,

> I feel that I'm not being given the proper direction to have a fair trial, Your Honor, and don't feel comfortable going forward with this trial. With respect, Your Honor, if you feel that this is—it's okay to move forward in the trial after expressing my concerns, then let's move on.

The District Court sought to correct Patina's misunderstandings and explained the reasoning and effect of its evidentiary rulings. It explained that counsel had acted properly regarding the status report and motions *in limine*, and that his witness who was excluded as untimely would have presented inadmissible evidence regardless. The District Court also reminded Patina of his counsel's successful motions to exclude evidence and verified that Patina had been shown all evidence with the exception of two Facebook photos that were proffered at 10 p.m. the Friday before trial.

¶5 Even with this explanation, Patina stated that he was seeking to remove counsel "due to—due to lack of communication and, you know, communication and I feel that lack of interest in my case." The District Court explained this Court's precedent that ineffective assistance of counsel claims are matters of postconviction relief and that substitution of counsel at the trial level only occurs in limited circumstances, including a breakdown in communication. When asked why he believed there had been a breakdown in communication, Patina stated his counsel had said that she liked one of the victims and that Patina therefore believed counsel did not cross-examine "to her full ability." The District Court explained that matters going to trial strategy were within counsel's discretion and asked again why Patina felt there was a breakdown in communication.

¶6 Patina reiterated general concerns that "the communication breakdown there, it was—it's not in my favor. You know, I feel that, you know, it's not there. I feel like I'm not being fully represented, you know, to the best of my knowledge." Patina again referenced his concerns that he was not being provided the previously discussed audio-visual evidence in a complete and timely manner. He stated that he was

> not discrediting [counsel] as, you know attorneys, like they do a great job, they're good at what they do. I'm not a lawyer, but I'm just saying, personally, I feel in that nature, that I don't feel comfortable going forward with—given the lack of evidence for myself to—to process.

Patina's counsel explained again that they had gone over all the discovery, and that to the extent paper copies were not provided, it was out of concern for discovery rules in a possible pending federal matter. The District Court continued pressing Patina for specific reasons why he felt there was a breakdown in communication, and Patina repeatedly failed to articulate more than a general feeling of discomfort and unsupported concerns that "evidence was left out." Patina's counsel stated that they were unaware of the alleged breakdown in communication prior to Patina's request.

¶7 After considering the discussion, the District Court called Patina and his counsel back to chambers. It denied the request for substitute counsel, referencing the relevant case law and stating:

> I find your complaints to be vague. The primary issue that you have raised with me repeatedly has been issues regarding discovery that have been fully explained by [counsel].
> And I have not found an issue regarding you not being provided with discovery or having the opportunity to go over that discovery with your counsel in advance of trial.

The other issue that was raised was your trust in counsel regarding advice on whether or not to testify. However, ultimately, as I stated previously, that is a decision reserved to you that you must make.

Regarding the testimonial issues, there are different levels of trust in every attorney-client relationship, nevertheless, I find that counsel will be able to effectively give you advice and you will be able to make an informed decision after we talk about that much more extensively later on in the trial.

I would also note, that while you have raised these complaints, both [attorneys], who are officers of the court, have stated that they have not perceived an issue until you raised this issue with them this morning. This cuts against a claim of breakdown in communication.

But also very important is, as I stated, again quoting th[is] Court, "the defendant's right to substitute counsel arises only when the breakdown of the attorney-client relationship becomes so great that the purpose of the appointment, effective assistance is frustrated."

As I stated, I found counsel's performance thus far to be effective. Counsel has prevailed on multiple motions to exclude evidence in this case that I deemed was prejudicial; moreover, both [attorneys], [one attorney] with regard to lay witnesses, [one attorney] with regard to law enforcement witnesses, have both cross-examined on multiple issues pointing out inconsistencies, pointing out issues regarding the underlying investigation in this case that will provide them with a basis to make effective arguments during closing argument.

And so, therefore, at this time I am not going to remove counsel and we will move forward.

Patina appeals this decision.

## STANDARD OF REVIEW

¶8    A request to substitute counsel is within the sound discretion of the district court and is reviewed for abuse of discretion. *State v. Aguado*, 2017 MT 54, ¶ 8, 387 Mont. 1, 390 P.3d 628. A district court abuses its discretion if it acts arbitrarily, without the employment of conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice. *State v. Cheetham*, 2016 MT 151, ¶ 13, 384 Mont. 1, 373 P.3d 45. In determining whether a district court abused its discretion, we consider both the procedures employed by the trial court during the initial inquiry into defendant's complaints, and the

court's analysis of whether a defendant's claims are seemingly substantial, necessitating a further hearing. *State v. Khongwiset*, 2020 MT 215, ¶ 23, 401 Mont. 142, 471 P.3d 51 (citing *State v. Schowengerdt*, 2018 MT 7, ¶ 16, 390 Mont. 123, 409 P.3d 38).

## DISCUSSION

¶9 Both the United States Constitution and the Montana Constitution guarantee a criminal defendant the right to effective assistance of counsel. U.S. Const. amend. VI; Mont. Const. art. II, § 24. To secure this guarantee, a defendant may substitute counsel when certain circumstances arise such that the defendant's ability to mount a defense is frustrated. *See State v. Johnson*, 2019 MT 34, ¶¶ 17-18, 394 Mont. 245, 435 P.3d 64. "A defendant may not demand substitute counsel simply because he lacks confidence in, or does not approve of, his counsel; he only has the right to substitute counsel in a few instances." *Johnson*, ¶ 14. A defendant is entitled to effective assistance of counsel, not to counsel of his choice, or even a meaningful relationship with counsel. *Johnson*, ¶ 14.

¶10 We have held that a defendant is entitled to substitute counsel if he presents material facts showing good cause for the substitution based on the following: (1) an actual conflict of interest; (2) an irreconcilable conflict between counsel and the defendant; or (3) a complete breakdown in communication between counsel and the defendant. *Johnson*, ¶ 19. A defendant's complaints about his attorney's chosen trial strategy or specific defense tactics must be reserved for an ineffective assistance of counsel claim raised on direct appeal or in a postconviction proceeding. *Johnson*, ¶ 27. Patina does not allege that counsel had an irreconcilable conflict with him or that counsel had an actual conflict of interest. Hence, he needed to show a complete breakdown in communication with counsel;

6

where communication becomes so compromised that mounting a defense is impossible, a defendant's constitutional right to effective assistance of counsel is frustrated. *Johnson*, ¶ 18.

¶11 When a defendant requests substitute counsel, the district court first conducts an initial inquiry to determine whether the complaints are "seemingly substantial." *Cheetham*, ¶ 20. A district court's inquiry is adequate if it considers a defendant's factual complaints together with counsel's specific explanations addressing the complaints. *Johnson*, ¶ 22 (collecting cases). If the district court performs an adequate initial inquiry and determines the defendant's complaints are not seemingly substantial, the court does not need to conduct a hearing to address the complaints. *Johnson*, ¶ 22 (citing *State v. Gallagher*, 1998 MT 70, ¶ 15, 288 Mont. 180, 955 P.2d 1371).

¶12 Patina asserts that although the District Court conducted an adequate initial inquiry, it incorrectly determined that his complaints were not "seemingly substantial" or, alternatively, "applied the wrong legal standard"[1] to his complaints. In either event, he argues that the District Court abused its discretion by not conducting an additional, separate hearing on his request for substitution of counsel.

¶13 The question is not whether a defendant's complaints are facially "seemingly substantial" before the initial inquiry; rather, the question is whether defendant's complaints *remain* "seemingly substantial" once a district court has the benefit of hearing the complaints along with counsel's explanations. Here, Patina alleged that he had not

---

[1] It is not clear what legal standard Patina believes to be wrong. We assume Patina refers to the procedure for initial inquiries and hearings on substitution of counsel articulated in *Johnson*.

been shown complete discovery, that his counsel's cross-examination was biased, and that various interactions and filings were untimely. But following the initial inquiry, it became clear that Patina's articulable complaints were either his misunderstandings, matters of trial strategy, or otherwise adequately explained by counsel to the point that they were unsubstantiated. What remained was only vagary and a general feeling that counsel's performance was unsatisfactory or ineffective—arguments that we have expressly held are not grounds for substitution of counsel.

¶14 A district court's initial inquiry should "critically analyze[] the defendant's factual allegations together with counsel's specific explanations." *Johnson*, ¶ 25 (citing *Aguado*, ¶ 23). To hold, as Patina suggests, that complaints deemed insubstantial by the district court's analysis may nonetheless be "seemingly substantial" and require a hearing based solely on the facial allegations, would entirely obfuscate the purpose of the initial inquiry and impede the court's efficiency. In this case, the District Court properly and patiently conducted an initial inquiry, determined that Patina's grievances did not rise to the level of a "seemingly substantial" complaint showing a complete breakdown in communication, and exercised its discretion to find that an additional hearing was not warranted.

**CONCLUSION**

¶15 The District Court properly followed this Court's procedure for assessing a defendant's request for substitution of counsel outlined in *Johnson*. Patina's conviction is affirmed.

/S/ LAURIE McKINNON

8

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE