FILED

04/22/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0059

DA 23-0059

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 79N

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

RICHARD LAMAR RUTLEDGE,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fifteenth Judicial District,
In and For the County of Roosevelt, Cause No. DC-19-4
Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Tammy Hinderman, Appellate Defender Division Administrator,
Charlotte Lawson, Assistant Appellate Defender, Helena, Montana

       For Appellee:

       Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

       Thomas J. Bleicher, Roosevelt County Attorney, Selene Koepke,
Meghan Paddock, Special Deputy County Attorneys, Wolf Point,
Montana

       Submitted on Briefs:  February 26, 2025

       Decided:  April 22, 2025

Filed:

       _____
                     Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Richard Rutledge appeals his Roosevelt County conviction on two counts of incest, claiming that the Fifteenth Judicial District Court should have appointed substitute counsel when Rutledge made complaints to the court about his lawyers following the entry of his guilty plea. At minimum, Rutledge alleges, the court improperly failed to conduct an adequate initial inquiry into whether Rutledge was entitled to substitute counsel before it proceeded to sentencing. Finding no error, we affirm.

¶3 Rutledge and the State entered a plea agreement that called for Rutledge to plead guilty to two counts of felony incest. The plea agreement provided that the State would recommend concurrent sentences of fifty years on each count, with a twenty-five-year parole restriction. Rutledge would be free to argue "for a lesser sentence which results in a net sentence no lower than sixty (60) years with fifty-five (55) years suspended and [a] five (5) year parole restriction."

¶4 During the change of plea hearing, from which lead defense counsel was absent, the District Judge noticed something wrong with Rutledge's eyes. The court asked, "if you can't read or see very well, did [co-counsel] read everything in that thing to you?" Rutledge

said, "yes, I trust him." The plea agreement stated explicitly that Rutledge had ample time to discuss the case with counsel, fully understood their advice, and was "completely satisfied" with their services. It stated further that Rutledge understood the maximum sentence for the offenses and that if the court imposed a greater sentence he would not be able to withdraw his plea. The court conducted a thorough plea colloquy, during which Rutledge confirmed that he understood the plea agreement, had enough time "in the big picture" to meet with his attorneys, and understood their answers. He also acknowledged that the District Court was not bound by any sentencing recommendations. The court accepted Rutledge's guilty pleas.

¶5      Soon after he pleaded guilty, Rutledge sent the court an ex parte letter complaining about his lawyers, saying they lied to him about the substance of his plea agreement and during court and provided ineffective assistance. He also complained that lead counsel was not present in court and asked the court to order both defense counsel to be at the next court date in person "so all of this can be addressed." The court had the letter filed and set a case management conference, directing counsel to "be prepared to address the procedure to be used to resolve the issues raised in the handwritten communication." At the conference, defense counsel indicated they were waiting for an updated psychosexual evaluation to see if they could work it out with Rutledge and then let the court know if he wanted new counsel or to withdraw his plea. The court advised Rutledge that it would set another conference and then see if he wanted to go forward with taking the plea agreement or back out of it. The court told Rutledge it wanted him to be well informed and to be able

to make an informed decision. Rutledge expressed concern about what he was told about the sentence, saying it didn't add up. Rutledge complained about a lack of communication with his lawyers (who were from out of town) but told the court, "If they come up and see me and they don't bull crap me, I'm good to go." After additional discussion about getting the case moving forward and setting a date for the next status hearing, Rutledge finally said, "I mean as it stands right now, your Honor, I am not going to withdraw my guilty plea . . . . And that will be that way until I am explained every detail."

¶6 The court held another status hearing the following month. Defense counsel confirmed they had met with Rutledge in person. After discussion about the status of the psychosexual evaluation, the court discussed sentencing dates, asking Rutledge directly, "Better, Richard?" Rutledge told the court he would prefer to have lead counsel present in court in person. At the sentencing hearing about a month later, both defense counsel were present in person; they pointed out errors Rutledge had seen in the PSI, cross-examined the state's two witnesses, and called four witnesses on Rutledge's behalf.

¶7 Prior to Rutledge's allocution, the District Court advised him, "If there is something you think has been left out, missed, lost, not said right, now would be a really good time to tell me." Rutledge voiced no concerns with his attorneys or the voluntariness of his plea but responded, "Your Honor I am a 49-year-old man and I've accepted responsibility for these two charges." He took responsibility and apologized to the court for his actions. Rutledge told the court, "You know, my life is literally in your hands. I know I've been in front of you so many times that you are sick of seeing me." The District Court replied,

4

"No, not really. If you remember every time we've been here, I've asked you about it, haven't I?" Rutledge agreed. When the court asked if he was aware of "any legal reason why sentencing shouldn't be imposed at this time[,]" Rutledge replied, "No sir. I'm ready." The court imposed the sentence the State recommended, fifty years on each count, with a twenty-five-year parole restriction, to run concurrently.

¶8    Rutledge appeals, claiming that the court should have appointed substitute counsel after his letter made allegations that raised the prospect of an unavoidable conflict of interest with his trial counsel with respect to advice and further action regarding potentially withdrawing his guilty plea. Rutledge claims that his allegations accused counsel of failing to make him fully aware of the terms of the plea agreement, particularly the exchange of promises concerning sentences that could and would be recommended by the parties. Without the advice of conflict-free counsel, he claims, Rutledge was faced with substantial potential prejudice in proceeding to sentencing instead of considering a motion to withdraw his plea. At minimum, Rutledge argues, his allegations triggered the District Court's duty to conduct further inquiry regarding whether Rutledge was entitled to substitute counsel based on conflicts of interest and/or an irreparable breakdown in his attorney-client relationships.

¶9    We review for abuse of discretion a trial court's ruling on a defendant's request for substitute counsel. *State v. Aguado*, 2017 MT 54, ¶ 8, 387 Mont. 1, 390 P.3d 628 (citations omitted). If a defendant asserts a claim of ineffective assistance of counsel and requests the appointment of new counsel, the "district court must conduct an 'adequate initial

inquiry' to determine whether the defendant's claim is 'seemingly substantial.'" *State v. Happel*, 2010 MT 200, ¶ 14, 357 Mont. 390, 240 P.3d 1016 (quoting *State v. Gallagher*, 1998 MT 70, ¶ 15, 288 Mont. 180, 955 P.2d 1371). "In determining whether a district court abused its discretion, we consider both the procedures employed by the trial court during the initial inquiry into defendant's complaints, and the court's analysis of whether a defendant's claims are seemingly substantial, necessitating a further hearing." *State v. Patina*, 2024 MT 257, ¶ 8, 418 Mont. 523, 558 P.3d 799.

¶10    As a threshold matter here, Rutledge never requested the District Court for substitute counsel.   Contrary to his written plea agreement and statements in open court, he complained that his attorneys both had lied to him about the plea agreement and did not explain the sentence that would be recommended.  Rutledge said he had not had effective assistance from them and asked the court to direct both counsel to appear in person "so all of this can be addressed."  The court honored his request and convened an initial inquiry to explore Rutledge's complaints.  When a defendant does not request substitute counsel, "the defendant 'fails to implicate the "seemingly substantial" analysis and the need for a subsequent hearing' on his complaints about his lawyer." *State v. Crawford*, 2016 MT 96, ¶ 42, 383 Mont. 229, 371 P.3d 381 (quoting *State v. Clary*, 2012 MT 26, ¶ 28, 364 Mont. 53, 270 P.3d 88).

¶11    The court did convene a hearing, however, at which it heard from his counsel and explained to Rutledge the proposal for moving forward with the psychosexual evaluation and meeting with his attorneys before deciding if he wanted to withdraw his plea.  Rutledge

confirmed that what he really wanted was to meet with them face-to-face and get adequate information about what sentence he was facing. He told the court that he did not intend to withdraw his plea but wanted to be "explained every detail."

¶12 Rutledge got what he requested during that hearing. Both of his co-counsel came to see him in person, and the evaluation was completed. Though Rutledge now complains that the court did not allow him to develop the record concerning his complaints, he affirmatively told the court that what he wanted was to meet with his lawyers and have them explain "every detail" of the plea agreement. Rutledge argues that he should have had objective legal advice before the hearing so he could be advised of his options by conflict-free counsel. But a defendant is not entitled to the appointment of additional counsel during an initial inquiry on his complaints. *State v. Gazda*, 2003 MT 350, ¶ 32, 318 Mont. 516, 82 P.3d 20. "The initial inquiry only serves to establish whether a defendant has a substantial claim; it is not a hearing on the merits of that claim." *Gazda*, ¶ 32. "If a district court's initial inquiry reveals a seemingly substantial complaint, the court must hold a hearing to address the validity of the complaints, and appoint separate counsel to represent the defendant." *Happel*, ¶ 14.

¶13 Based on the colloquy between the court, counsel, and Rutledge in open court, we conclude that the District Court did not abuse its discretion by proceeding without another hearing to address the validity of his complaints. Rutledge at no time requested substitute counsel but only an opportunity to communicate with the counsel he had. Rutledge assured the court that he was "good to go" if his attorneys came to see him and gave him a truthful

explanation. "Absent 'a request for another attorney, the District Court was not required to conduct further inquiry into the matter.'" *Crawford*, ¶ 43 (quoting *Clary*, ¶ 28). By the time of sentencing, despite the District Court's express invitation to "tell me" if there was anything "left out, missed, lost, not said right," Rutledge raised no further concerns about counsel's representation and no lack of understanding about the terms of the plea agreement.

¶14 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court adequately explored with Rutledge his concerns with appointed counsel. The court did not abuse its discretion when it did not appoint another attorney to advise him or conduct another hearing.

¶15 The judgment is affirmed.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ KATHERINE M BIDEGARAY
/S/ INGRID GUSTAFSON